UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

R.O.L. (XXX-XX-0764)            CIVIL ACTION NO. 11-cv-1274

VERSUS            JUDGE WALTER

U.S. COMMISSIONER, SOCIAL SECURITY ADMINISTRATION            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

     R.O.L. ("Plaintiff") filed a claim for disability benefits based on back pain and mental health problems. He was born in 1961 and has a 12th-grade special education. He is unable to read or write. His past work experience includes boat outfitter and roustabout.

     ALJ Charles Lindsay held a hearing and issued a written decision that denied the claim. The Appeals Council denied a request for review, which resulted in a final decision by the Commissioner. The Appeals Council noted that Plaintiff, based on a later-filed application, was found to be under a disability beginning April 11, 2009 (the day after ALJ Lindsay's decision), but that information did not warrant a change in the decision on this application. Plaintiff filed this civil action to seek judicial review of the Commissioner's decision. For the reasons that follow, it is recommended that the Commissioner's decision be reversed and the case be remanded for further proceedings.

**Summary of the ALJ's Decision**

The ALJ analyzed Plaintiff's claim under the five-step sequential analysis established in the regulations. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007). He found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability in July 2007 (step one) and suffered from back pain, depression, and anxiety, which are "severe impairments" within the meaning of the step-two regulations. He found at step three that the impairments did not meet or equal the requirements of any listed impairment, which would have required a finding of disabled without regard to the claimant's age, education, or work experience.

The ALJ next assessed the evidence and determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), reduced by the ability to engage in certain activities such as stooping and climbing stairs no more than occasionally, a marked limitation in the ability to handle detailed instructions and deal with the public, and a moderate limitation in the ability to maintain attention and concentration for extended periods, interact with co-workers, and set goals independently of others.

A vocational expert ("VE") testified that Plaintiff's past work was performed at the medium or heavy exertional level. Based on that testimony, the ALJ found at step four that Plaintiff could not return to his past relevant work. The VE then identified other jobs,

cleaner/housekeeping and patch worker[1], which she testified a person with Plaintiff's RFC and other factors could perform and which exists in significant numbers in the national economy. The ALJ accepted that testimony and found at step five that Plaintiff was not disabled.

**Issues on Appeal; Standard of Review**

Plaintiff lists two issues for appeal. He contends that the ALJ (1) did not properly evaluate the medical opinion evidence and (2) did not consider all of his functional limitations in determining his RFC. In reviewing these issues, this court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

---

[1] The Dictionary of Occupational Titles describes the job of patch worker as follows: "Sweeps floors of cotton-bale compressing plant. Gathers loose cotton from floor. Carries or transfers light equipment to various workers, using handtruck." Definition No. 381.687-030. The VE testified that there are 3,100 such jobs in Louisiana.

**Relevant Evidence**

Plaintiff testified that his back pain began when he was run over by a truck a few years before. He was able to get better and return to the job he then had working for a boat company in Vivian, Louisiana. He said that he worked at the company for about 10 years. His job was putting rails, ladders, and lights on the boats. A witness identified as Plaintiff's sister testified that her brother (apparently another brother) was a supervisor at the plant and actually filled out the application for Plaintiff and helped him do his job by showing him how to measure pieces and the like. After the supervisor-brother left the company, Plaintiff was unable to adapt to changes in the job.

Plaintiff testified that he was divorced and lives alone in a mobile home. He was not receiving any public assistance and got by through borrowing from others so that he could eat. He was laid off from his job following a wrist injury, and the boat company has since closed. He is able to drive, including trips to Shreveport for mental health care. His sister testified that his house is a mess because he lacks the stamina to stand long enough to wash even a single day's dishes, and he cannot bend enough to make his bed.

Of particular relevance to the appeal, Plaintiff estimated that he could sit for only about 20 minutes before he would have to get up and walk around. Otherwise, his legs would burn. He said he had a similar problem if he stands too long, and his legs will become numb and burn. Tr. 31. He later said that if he was walking and his legs began to burn, he would have to sit down for 30 or 40 minutes (although he said earlier he could sit for only about 20 minutes) before he could continue walking. Tr. 32. At the hearing, Plaintiff's

counsel made the point that these interruptions were supported by a functional capacity evaluation from Tri-State. Tr. 34. This was a reference to a report by Steve Allison, a doctor of physical therapy.

Allison conducted a 3.5-hour evaluation of Plaintiff and determined that he had the RFC to perform full-time work activity in the light to medium physical demand level, subject to certain restrictions. Tr. 185-87. Those restrictions are set forth on a chart (Tr. 188) and include with respect to sitting that, on average, Plaintiff will need to stand and walk for 20 minutes each hour. With respect to standing and walking, Allison found that Plaintiff would need to sit for, on average, 20 minutes each hour. The VE was asked at the hearing if a person with Plaintiff's RFC and a sit-stand option could perform the two light jobs she identified. She testified that the jobs would be eliminated by that requirement. Tr. 38.

The ALJ cited Allison's report for the findings that Plaintiff could lift and carry at least 20 pounds occasionally, had no significant limitations with regard to manipulating objects or grasping, and could stoop, kneel, and the like occasionally. Tr. 17. The ALJ's decision did not mention the other, more limiting, aspects of the Allison report. Other than a reference to a visit to LSUHSC for a complaint of back pain, the opinion did not refer to a consultative exam, treatment history, or other medical evidence regarding the extent of Plaintiff's back problem. The parties have not identified such evidence in their briefs, and there does not appear to be even a state agency medical consultant report on the issue. The clinical and consultative evidence has focused largely on Plaintiff's mental health issues.

Allison's limitations with regard to sitting and standing/walking may not be exactly a sit-stand limitation, but they are quite similar and give rise to a reasonable probability that the VE would testify that they also would eliminate the identified jobs. A physical therapist is not an "acceptable medical source" who may establish whether the claimant has a medically determinable impairment. 20 CFR § 404.1513. But the regulations allow the agency to use evidence from "other sources" to show the severity of impairments and how they affect the ability to work. Information from other medical sources such as therapists, chiropractors, and nurse practitioners is important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence. The opinion of an other medical source may even outweigh the opinion of an acceptable medical source in the right circumstances. See Social Security Ruling 06-03p; Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006).

The ALJ found a severe back pain impairment. Allison's report was then relevant to determining the extent that impairment affected Plaintiff's ability to lift, sit, stand, etc. The undersigned has noted in a number of decisions that Allison often finds rather extreme limitations regarding the need to stand and walk around after sitting for a time, or the need to sit for a time after standing and walking a short time. VEs usually testify that such limitations preclude most or all jobs in the light or sedentary field, especially when they require the person to frequently get up and leave his workstation for several minutes of each hour. The undersigned has required a firm and explained foundation in the medical and other evidence for such extraordinary restrictions. When there was not such a foundation in

Allison's report or elsewhere in the record, and there were medical records and physician findings that did not suggest such limitations, the court has not reversed despite an ALJ's lack of discussion of the Allison report. See, e.g., C.P.W. v. Commissioner, 2011 WL 3585474, *5 (W.D. La. 2011). But the Commissioner has not identified any such medical records or physician findings in this record.

An ALJ is not required to discuss every piece of evidence, but he must discuss the uncontroverted evidence he chooses not to reply upon so that the court can perform its role of reviewing the Commissioner's decision for support by substantial evidence. The court is unable to conduct a meaningful review where significant and probative evidence is rejected or overlooked without comment or explanation. G.S.T. v. Commissioner, 2009 WL 3031678, *2 (W.D. La. 2009). The court has not, however, reversed in such cases unless the omission was so significant as to prevent effective judicial review or deprive the Agency of substantial supporting evidence. O.W.S. v. Commissioner, 2012 WL 681712, *4 (W.D. La. 2012).

This case falls in the category where reversal is in order. The ALJ found that Plaintiff had a severe impairment of back pain. There appears to be little evidence regarding the severity of the impairment or the extent of limitations it causes. The only evidence pointed to by the parties is Plaintiff's testimony and Allison's report, both of which appear to be inconsistent with Plaintiff performing the demands of the two jobs identified at step five. It is appropriate under these circumstances to reverse the Commissioner's decision for lack of substantial evidence and remand for further proceedings. Those proceedings may include the

gathering of additional medical-source treatment or consultative evidence regarding Plaintiff's back impairment and related limitations. Plaintiff will also be free on remand to continue to press his arguments regarding the extent of his limitations related to his mental impairment, which need not be addressed in light of the recommended reversal with regard to the physical impairment.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed and that, pursuant to sentence four of 42 U.S.C. § 405(g), the case be remanded to the Agency for further proceedings consistent with the court's decision.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 2nd day of August, 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE